In re The NATIONAL SUGAR REFINING COMPANY, Debtor.

The NATIONAL SUGAR REFINING COMPANY and Bankers Trust Company, Plaintiffs,

v.

STROEHMANN BROTHERS COMPANY, Defendant.

Bankruptcy No. 81 B 11756.

Adv. No. 82–5668–A.

United States Bankruptcy Court, S.D. New York.

Jan. 31, 1983.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiff-debtor.

Moses & Singer, New York City, for plaintiff Bankers Trust Co.

Morgan, Lewis & Bockius, New York City, for defendant.

## DECISION ON MOTION TO DISMISS COMPLAINT

EDWARD J. RYAN, Bankruptcy Judge.

Defendant, Stroehmann Brothers Company ("Stroehmann"), seeks an order dismissing the complaint of debtor-plaintiff, The National Sugar Refining Company ("National") * pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6). For the reasons set forth below, the defendant's motion is denied.

On or about September 3, 1981 (the filing date), National filed a petition under Chapter 11 of the Bankruptcy Code (the "Code") and was continued in possession of its property and in operation of its business pursuant to Section 1108 of the Code.

In May, 1982, National started an adversary proceeding in this Court seeking an order (i) authorizing National to assume its profitable contracts with Stroehmann and (ii) awarding damages based on Stroehmann's repudiation of those contracts. This complaint alleges that as of the filing date, National was a party to seven executory contracts with Stroehmann pursuant to which National was to deliver and Stroehmann was to accept specified quantities of refined sugar.[1] The complaint also alleges that prior to the filing date, National made certain partial deliveries of sugar to Stroehmann under four of the contracts, leaving a balance on each contract. Since the inception of the contracts, the price of sugar has declined. National asserts a right to assume the contracts since such action would be profitable and in the best interests of National's estate.

Furthermore, the complaint alleges that subsequent to the filing date, Stroehmann, without seeking an order from the Court, unilaterally treated the contracts as rejected by National and purchased sugar on the spot market. Plaintiff claims that defendant's actions constituted repudiation of the contracts and that plaintiff is entitled, therefore, to damages based on such repudiation in an amount equal to the difference between the unpaid contract price under each of the contracts and the market price during the period in which the sugar was required to be delivered and accepted under each contract, together with any incidental damages and interest as determined by the Court.

On or about June 15, 1982, Stroehmann moved to dismiss the complaint asserting that the complaint failed to state any claim upon which relief could be granted. De-

---

* Joining as plaintiff in this case is Bankers Trust Company. For the sake of convenience, all references to the plaintiff or National are deemed references to both plaintiffs.

1.

| Contract Number | CWT | Delivery Period | Price |
|---|---|---|---|
| 3613 | 1000 | 2nd Quarter 1981 | $32.17 |
| 3626 | 1000. | 3rd Quarter 1981 | 33.00 |
| 3674 | 1000 | 2nd Quarter 1981 | 32.17 |
| 3717 | 3000 | 3rd Quarter 1981 | 30.49 |
| 3751 | 3000 | 4th Quarter 1981 | 26.64 |
| 3786 | 2000 | 2nd Quarter 1982 | 27.90 |
| 4175 | 2000 | 1st Quarter 1982 | 26.54 |

fendant contends that the contracts which plaintiff seeks to assume either have terminated by their terms, by plaintiff's repudiation of same, or through full performance. Defendant also contends that National failed to demonstrate that they could provide adequate assurance of future performance as required by Section 365 of the Code if the contracts were assumed by the plaintiff. Plaintiff, however, asserts that there have been no defaults on its part under any of the contracts.

The question before this Court is whether National can prove any set of facts which would entitle it to relief. If this answer is in the affirmative, the motion to dismiss must be denied. For the purpose of this motion, the well pleaded material allegations of the complaint are taken as admitted. 2A *Moores Federal Practice,* ¶ 12.08, pp. 2265–69 (Supplement 1982).

■ A complaint should not be dismissed for insufficiency unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It also must be noted that in ruling on such a motion, the Court must read the record in the light most favorable to the plaintiff. *Conley v. Gibson, supra;* see, also, *Scheuer v. Rhodes, supra; Budco, Inc. v. The Big Fights, Inc.,* 594 F.2d 900, 902 (2d Cir.1979).

■ An initial inquiry must be made into National's right to assume the contracts. The debtor in possession derives his power to assume or reject an executory contract from Section 365(a) of the Bankruptcy Code which provides in pertinent part: "[T]he trustee, subject to the court's approval may assume or reject any executory contract or unexpired lease of the debtor." Whether a debtor in possession should be permitted to assume an executory contract depends on the "business judgment" test. *Group of Institutional Investors v. Chicago, Mil., St. P. & Pac. R.R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943);

*In re Minges,* 602 F.2d 38, 42 (2d Cir.1979). If a contract is profitable to a debtor, its assumption should be authorized. 2 *Collier on Bankruptcy,* ¶ 365.03, pp. 365–13 et seq. (15th ed.1981). In the present case, since the price of sugar has decreased since the contracting date, assumption of the contract by National would be profitable, and thus should be allowed if otherwise valid.

The Code provides for the assumption of an executory contract if there has been no default, and cure with adequate assurances if there has been a default. Defendant asserts that the contracts were no longer executory and, therefore, not assumable. It is obvious that for there to be a right to cure an executory contract under § 365(b), there must be a contract or lease still in existence.

■ Defendant contends that the contracts were either terminated by their terms, repudiated by National or previously executed. A simple definition of an executory contract is a contract on which performance remains due to some extent on both sides. House Report No. 95–595, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978 p. 5787. Since National still has a balance remaining on four contracts and the total order remaining on three other contracts, it has an open obligation with Stroehmann. Similarly, since Stroehmann still has to accept the remainder of the orders and tender payment for the same, it also has performance remaining on its obligation. Plaintiff's assertions as to the performance on the remaining contracts are admitted as true for the purpose of this motion; thus, defendant's contention that the contracts are fully executed and non-executory must be disregarded for purposes of its motion.

The defendant also contends that the contracts have expired due to the passage of the delivery period specified in each contract. In light of the inclusion of contractual language which deals with the possibility of exceeding the specified delivery peri-

768

od,[2] it cannot be said that the plaintiff cannot prove the period specified was non-exclusive. Also, due to past dealings between the parties, it is not clear that plaintiff cannot prove that the contracts were not terminated by passage of the specified dates. Such dealings include Stroehmann's ordering and National's delivery of sugar pursuant to contracts after the stated delivery period. Such evidence of a course of dealing may be used to explain or supplement the terms of any writing to determine the true understanding of the parties. *See,* Uniform Commercial Code ("U.C.C.") Sections 1–205(3), 2–202(a).

It is not clear that National cannot prove that the contracts were not repudiated by anticipatory breach as claimed by the defendant; or that if there was an anticipatory breach by plaintiff that it was not retracted. The plaintiff also argues that assuming there was a repudiation and that it involved only the two contracts requiring delivery of sugar in 1982, such repudiation is not a defense to the remaining five executory contracts which required deliveries in 1981.

Defendant contends that plaintiff's act of closing its refinery, coupled with the acquisition of information from a National broker to the effect that National would be unable to fulfill its contractual obligation with Stroehmann, was an anticipatory breach. Plaintiff, however, contends: (i) that National's refinery was open until the September 3 filing date and closed only temporarily *after* the filing date; (ii) that the statement relied on by defendant is merely hearsay and is of no avail; (iii) that defendant's letter of cancellation came after defendant learned of plaintiff's readiness to perform and is, therefore, a repudiation by defendant. The Uniform Commer-

cial Code, Section 2–610(a), provides that an aggrieved party who is the victim of some other party's anticipatory breach may wait a commercially reasonable time for performance by the repudiating party. The Uniform Commercial Code also provides that such a breach will be retracted if performance is again undertaken and there has been no action on the part of the aggrieved party. *See,* U.C.C. Section 2–611. Thus if National resumed performance under the contracts, the anticipatory breach, if any, was retracted. It may be possible for National to prove that it is entitled to relief based on a theory that (a) there was no breach; (b) there was a retraction of any anticipatory breach; or (c) there was a repudiation by Stroehmann in purchasing on the spot market.

The plaintiff may be able to prove a set of facts under which relief could be granted if Section 365(a) of the Code is controlling. This Section provides that a debtor in possession has a right to assume an executory contract under which there has been no default without providing adequate assurance of future performance. 2 *Collier on Bankruptcy* ¶ 365.04, pp. 365–29–30 (15th ed. 1981). Since it is possible for plaintiff to prove that there was no default on its part, it cannot be said absolutely that Section 365(a) of the Code does not control. If Section 365(a) is found to control, it might be possible for plaintiff to prove a set of facts under which relief could be granted. Cure and adequate assurance of future performance are required only where there has been a default on a contract that the debtor seeks to assume.

For purposes of the present case, assuming there has been a default, it may be possible for the plaintiff to satisfy the Section 365(b) requirements.[3] National con-

---

2. Each of the contracts provides that the buyer will be liable for increased carrying costs if it does not order the full quantity of the sugar during the contract period. In addition, the contracts give National the right to add to the price of sugar not ordered by the buyer during the contract period, increased importation fees and duty charges.

3. Section 365 of the Code provides, in pertinent part:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

tends that it can provide adequate assurance of performance at a trial on the merits.

Under FRCP Rule 15(a), leave to amend "shall be freely given when justice so requires." *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). National should have the opportunity to develop whatever proof is available so that it may offer evidence to support its claims. A reading of the many factual allegations in the motion papers indicates this controversy should not be disposed of on the pleadings or without further development of the facts. *Budco, Inc. v. The Big Fights, Inc., supra.*

In sum, since the record must be read in a light most favorable to the plaintiff and since it cannot be stated with any certainty that the debtor-plaintiff is not entitled to any relief on the basis of its asserted claims, this motion to dismiss is denied.

It is so ordered.

(A) cures or provides adequate assurance that the trustee will promptly cure, such default;
(B) compensates or provides adequate assurance that the trustee will promptly compen-

sate a party other than the debtor to such contract or lease, for any pecuniary loss of such party resulting from such default, and
(C) provides adequate assurance of future performance under such contract or lease.